CRAWLEY, Judge,
dissenting.
Westover Water Authority is a public water authority created under the provisions of § 11-88-3 et seq., Ala.Code 1975. For several years, the Authority has been buying its water from Shelby County because the Authority’s well has run dry. The record indicates that Westover customers are paying the highest water rates in Shelby County.
Recently, the Authority began negotiating with Shelby County for a buyout or merger of the two water systems. During the negotiations, the Authority inquired about job security for its employees in the event of an acquisition by the County. The County indicated that it would hire some of the Authority’s employees, but that the Authority’s office staff, consisting of longtime employees Marjorie Archer and Teresa Moore, would not be given comparable employment by the County.
Marjorie Are her and Teresa Moore have been employees of the Authority for 20 years. They are high school graduates who perform general clerical duties. They have no specialized competence or irreplaceable skills that make them indispensable. Before July 1, 1996, Marjorie Archer and Teresa Moore were at-will employees of the Authority. On or after that date, the Authority entered into employment contracts with the two women. The contracts are for a seven-year term, automatically renewable for an additional seven years, terminable by Archer and Moore upon 30 days’ notice to the Authority and terminable by the Authority only for cause.
The contracts provide that if the Authority is ever acquired by any other entity, then the Authority must pay the women all compensation and fringe benefits due them for the time remaining under their 14-year employment contracts. The payments are to be made in a lump sum reduced to present value by discounting at six percent. The record indicates that the payments due under the two employment contracts, if made within the next year or two, would approach $1 million.
Herman Moore sought a judgment declaring that the employment contracts were void and unenforceable. He argues, among other things, that the contracts exceed the statutory powers of a water authority. Section 11-88-7(a)(8), Ala.Code 1975, gives a water authority the power
“[t]o make, enter into and execute such contracts, agreements, leases and other instruments and to take such other actions as may be necessary or convenient to accomplish any purpose for which the authority was organized.”
(Emphasis added.) Moore insists that these “golden parachute” contracts are not “necessary” or “convenient” and that they will, in fact, thwart the purpose for which the authority was organized: to provide water *864 “upon ... reasonable terms and for ... reasonable rates” to the service area. See § 11— 88-7(a)(8), Ala.Code 1975. I agree.
When the legislature enacted § 11-88-1 et seq., which provided for the creation of water, sewer and fire protection authorities, it intended those entities “to aid the state in the execution of its duties.” § 11-88-2, Ala. Code 1975. A water authority that must charge exorbitant rates to meet its obligations under a “golden parachute” employment contract cannot successfully aid the state by performing its duty to provide service upon reasonable terms and at reasonable rates.